ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, | Case No. |
| | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** |
| Plaintiff, | |
| v. | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1387)** |
| CITY OF COLUSA, | |
| Defendant. | |

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE ("CSPA" or "Plaintiff"), by and through its counsel, hereby alleges:

## I.   INTRODUCTION

1.      The CITY OF COLUSA (the "City" or "Defendant") own and operates a wastewater treatment plant at 2820 Will S. Green Road, in Colusa, California (the "Facility"). The Facility operates under a National Pollutant Discharge Elimination System ("NPDES") Permit, Waste Discharge Order No. R5-2016-0062-01[1], which prohibits the Facility from discharging wastewater that causes the temperature of the receiving water to rise more than five degrees Fahrenheit.  The City's discharges of wastewater are often much warmer than the

---

[1] The 2016 NPDES Permit amended Order No. R5-2016-0062, which rescinded the prior operative permit, Order No. R5-2008-0184.

receiving water, and have raised, and continue to raise, the temperature of the receiving water more than five degrees Fahrenheit.

2.    The City discharges its treated wastewater into Powell Slough ("Receiving Water"), which is a tributary to the Colusa Trough, a tributary of the Colusa Basin Drain, which flows to the Sacramento River, and ultimately the Pacific Ocean via the Sacramento-San Joaquin Delta.

3.    The Colusa Basin Watershed provides suitable habitat for some forty-four special-status wildlife species during certain times of the year. The watershed provides suitable breeding habitat for nine federal or state-listed threatened or endangered species; Bank Swallow, California Tiger Salamander, Conservancy Fairy Shrimp, Giant Garter Snake, Swainson's Hawk, Western Yellow-Billed Cuckoo, Valley Elderberry Longhorn Beetle, Vernal Pool Fairy Shrimp, and the Vernal Pool Tadpole Shrimp. The watershed also provides suitable breeding habitat for 18 wildlife species considered by the state as species of special concern or protected species; Mountain Plover, Western Spadefoot Toad, Western Pond Turtle, White-Fronted Goose, Western Least Bittern, Golden Eagle, Black Tern, Northern Harrier, Merlin, Short-Eared Owl, Long-Eared Owl, Burrowing Owl, Loggerhead Shrike, Yellow Warbler, Yellow-Breasted Chat, Grasshopper Sparrow, Yellow-Headed Blackbird, and Tricolored Blackbird. The majority of these species utilize freshwater emergent wetlands, vernal pools, and/or riparian habitat; habitats that have been dramatically reduced compared to their historic distribution.

4.    The *Water Quality Control Plan for the Sacramento and San Joaquin River Basins ("Basin Plan")* identifies beneficial uses of the Colusa Basin Drain that reflect the importance of the habitats that the watershed provides, and sets forth water quality objectives for those inland surface waters.  Specifically, the Basin Plan states that "[a]t no time or place shall the temperature of COLD or WARM intrastate waters be increased more than 5°F above natural receiving water temperature." *Basin Plan*, at 3-13.

5.    The City's illegal discharges of wastewater that is not properly cooled has violated, and continues to violate, the *Basin Plan*, as well as the City's NPDES Permits, and

1   have directly harmed, and continues to harm, CSPA's members' use and enjoyment of the

2   Receiving Water and the water bodies into which the Receiving Water flows.

3   **II.   JURISDICTION AND VENUE**

4   6.   CSPA brings this civil suit under the citizen suit enforcement provision of the

5   Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1387 (the "Clean Water Act", the

6   "CWA" or "the Act") against the City of Colusa.  33 U.S.C. § 1365.  This Court has subject

7   matter jurisdiction over the parties and the subject matter of this action pursuant to Section

8   505(a)(1) of the Act, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331 (an action arising under the

9   laws of the United States).  Specifically, this action arises under Section 505(a)(1)(A) of the

10  Act, 33 U.S.C. § 1365(a)(1)(A) (citizen suit to enforce effluent standard or limitation).  The

11  relief requested is authorized pursuant to 33 U.S.C. §1365(a) (injunctive relief) and 1319(d)

12  (civil penalties), as well as 28 U.S.C. §§ 2201–2202 (power to issue declaratory relief in case of

13  actual controversy and further necessary relief based on such a declaration).

14  7.   On April 26, 2019, Plaintiff provided written notice to Defendant, via Certified

15  Mail, of Defendant's violations of the Act and of its intention to file suit against Defendant

16  ("Notice Letter"), as required by the Act.  *See* 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R.

17  § 135.2(a)(1).  Plaintiff also transmitted a copy of the Notice Letter to the Administrator of the

18  United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region

19  IX; the Executive Director of the State Water Resources Control Board ("State Board"); and

20  the Executive Officer of the Regional Water Quality Control Board, Central Valley Region

21  ("Regional Board"), pursuant to 40 C.F.R. § 135.2(a)(1).  A true and correct copy the Notice

22  Letter is attached hereto as **Attachment 1**, and is incorporated by reference.

23  8.   The Notice Letter specifically notified Defendant of its violations of (1) *Waste*

24  *Discharge Requirements for the City of Colusa Wastewater Treatment Plant Colusa County*,

25  Order No. R5-2016-0062-01, as amended by Order No. R5-2018-0018, NPDES No.

26  CA0078999 ("Amended 2016 NPDES Permit"); (2) *Waste Discharge Requirements for the*

27  *City of Colusa Wastewater Treatment Plant Colusa County*, Order No. R5-2016-0062, NPDES

28  No. CA0078999 ("2016 NPDES Permit"); and, (3) *Waste Discharge Requirements for the City*

*of Colusa Wastewater Treatment Plant Colusa County*, Order No. R5-2008-0184, NPDES No. CA0078999 ("2008 NPDES Permit").

9.      More than sixty days have passed since Plaintiff served the Notice Letter on Defendant and the agencies.

10.     Plaintiff is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this Complaint.

11.     Venue is proper in the Eastern District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this District.

12.     Venue is also proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

13.     Pursuant to Local Rule 120(d), intra-district venue is proper in Sacramento, California, because the sources of the violations are located within Colusa County.

III.    **PARTIES**

        A.      **California Sportfishing Protection Alliance**

14.     CSPA is a non-profit public benefit corporation organized under the laws of California, with its main offices in Stockton, California.  CSPA is dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of California waters, including the waters into which Defendant discharges polluted storm water.  To further its goals, CSPA actively seeks federal and state agency implementation of state and federal water quality laws, including the CWA, and as necessary, directly initiates enforcement actions on behalf of itself and its members.

15.     CSPA's offices are located at 3536 Rainier Avenue, in Stockton, California.

16.     CSPA's members use and enjoy the Sacramento River, Powell Slough, and their tributaries, as well as waters in and around the Sacramento-San Joaquin River Delta (the "Delta") for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, and engaging in scientific study.

Complaint for Declaratory
and Injunctive Relief and Civil Penalties                    4

17.    Information available to CSPA indicates that the City discharges wastewater in violation of its NPDES Permits into an unnamed tributary to Powell Slough, which flows to the Sacramento River, which flows to the Delta and discharges into the Pacific Ocean. These illegal discharges of wastewater degrade water quality and harm aquatic life in these waters, and thus impair CSPA's members' use and enjoyment of these waters.

18.    CSPA is informed and believes, and thereon alleges, that the City's illegal discharges of wastewater are ongoing and continuous. As a result, CSPA's members' use and enjoyment of these waters has been and continues to be adversely impacted by the illegal discharges of wastewater to waters used and enjoyed by CSPA's members.

19.    Continuing commission of the acts and omissions alleged herein will irreparably harm CSPA's members.

**B.    The City of Colusa**

20.    The City provides wastewater collection, treatment, and disposal services to residents and businesses in Colusa.  Colusa's Public Works Division, Department of City Sewer and Water, is responsible for the day-to-day operation and maintenance of the sewage collection system ("Collection System"), which is owned and operated by Colusa.

21. The City owns and operates the City of Colusa Wastewater Treatment Plant (the "Facility"), which provides sewer treatment services to a population of approximately 6,000. The Facility is located at 2820 Will S. Green Road, Colusa, CA.

22. The City Manager is responsible for the day-to-day operations of the City of Colusa. The Mayor is a member of the City Council, presiding officer over all City Council meetings, authorized to sign legal documents on behalf of the City, and represents the City on local, state, and national levels.

**IV.    FACTUAL BACKGROUND**

**A.    The City of Colusa Wastewater Treatment Plant**

23.    The City of Colusa Wastewater Treatment Plant's design daily average flow capacity is 0.7 million gallons per day.

24.    The Facility's treatment process includes an influent pump station, plant

Complaint for Declaratory
and Injunctive Relief and Civil Penalties          5

headworks with mechanical screens and flow metering, a nitrifying activated sludge system (including an aeration basin, air blowers, secondary clarifier, and return sludge pump station), tertiary filtration facilities (including chemical addition, flocculation, and cloth media filtration), ultraviolet light disinfection, and an effluent re-aeration basin and pump station. Sludge is anaerobically digested and dewatered using a belt filter press.  Dried biosolids are hauled to a landfill.

25.     The Facility does not have cooling towers designed to lower the temperature of the treated effluent.

26.     Treated municipal wastewater is discharged at Discharge Point 001 to an unnamed tributary of Powell Slough, which is a water of the Unites States and a tributary to the Colusa Basin Drain at latitude N39º, 10', 50" N and longitude 122º, 01', 48" W.

27.     The unnamed tributary to Powell Slough and Powell Slough are tributary to the Colusa Basin Drain.  The Colusa Basin Drain discharges to either the Sacramento River at Knights Landing or may be diverted to the Yolo Bypass through the Knights Landing Ridge. Both the Yolo Bypass and the Sacramento River discharge to the Delta.

28.     The City is required to monitor the receiving water into which it discharges treated municipal wastewater.  An upstream monitoring location, RSW-001U, which is located up to 50 feet upstream of Discharge Point 001, is compared to a downstream monitoring location, RSW-001D, which is located up to 200 feet downstream of Discharge Point 001.

**B.     Receiving Water Temperature Limitations**

29.     The City has operated under a number of NPDES Permits, three of which are relevant for this Complaint.  All three relevant NPDES Permits contain prohibitions against the discharge of wastewater that causes the natural temperature of the receiving water to rise more than five degrees Fahrenheit.  NPDES Permits, Section V.A.15.  However, the 2008 NDPES Permit allowed the City to measure temperature as a monthly average, and therefore compliance was determined on a monthly basis.  By contrast, the 2016 NPDES Permits determine compliance with Section V.A.15 by calculating the difference between the upstream and downstream sampling locations on a weekly basis.

30.     From April 25, 2014 to November 1, 2016 – a period during which the 2008 NPDES Permit and the monthly average method of measuring temperature were in effect – the City discharged wastewater that raised the natural temperature of the receiving water by more than five degrees during at least six months.

31.     From November 2, 2016 to the present – the period during which the 2016 NPDES Permits and the weekly compliance method were in effect – the City discharged wastewater that raised the natural temperature of the receiving water by more than five degrees during at least 28 weeks.

32.     CSPA is informed and believes, and thereon alleges, that Defendant's failure to properly cool its discharges of wastewater have caused and will continue to cause the natural temperature of the receiving water to rise more than five degrees Fahrenheit in each of the instances identified above.

33.     CSPA is informed and believes, and thereon alleges, that Defendant has lacked and continues to lack the necessary equipment to properly cool its discharges of wastewater, and that these unlawful increases of the natural receiving waters will continue to occur until such time as Defendant installs cooling towers designed to lower the temperature of the treated effluent.

**C.      The Deleterious Environmental Impacts of the City's Illegal Discharges**

34.     CSPA is informed and believes, and thereon alleges, that discharges of improperly cooled wastewater from the City's wastewater treatment plant have been, and are continuing to be, discharged to the unnamed tributary to Powell Slough.

35.     CSPA is informed and believes, and thereon alleges, that the unnamed tributary to Powell Slough is a water of the United States as defined by the Clean Water Act and controlling legal authority.

36.     The unnamed tributary to Powell Slough provides habitat for aquatic species, opportunities for wildlife viewing, fishing, and other water-related recreation.

37.     The designated potential and existing beneficial uses of the Colusa Basin Drain, to which the unnamed tributary to Powell Slough discharges, include contact water recreation,

wildlife habitat, irrigation and stock watering, warm and cold freshwater habitat, warm migration, and warm spawning. *Basin Plan*, Table 2-1.

38. The City's discharges of inadequately cooled municipal wastewater to waters of the United States in violation of the Clean Water Act directly harm CSPA's members' use and enjoyment of the impacted waters.

### V.   LEGAL BACKGROUND

#### A.   The Clean Water Act

39. Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

40. The Clean Water Act establishes an "interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water . . . ." 33 U.S.C. § 1251(a)(2).

41. Congress developed both a water quality-based and a technology-based approach to regulating discharges of pollutants from point sources to waters of the United States.

42. Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Act.

43. The term "discharge of pollutants" is defined broadly to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

44. Pollutants are defined to include, among other examples, solid waste, sewage, sewage sludge, chemical wastes and biological materials discharged into water. 33 U.S.C. § 1362(6).

45. A "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, [or] conduit . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

46. "Navigable waters" means "the waters of the United States." 33 U.S.C. § 1362(7). Waters of the United States includes, among others things, waters that are, were, or

are susceptible to use in interstate commerce, and tributaries to such waters.  40 C.F.R. § 230.3 (2015).

47.      Section 402 of the Act, 33 U.S.C. § 1342, establishes the NPDES program, a permitting program that regulates the discharge of pollutants into waters of the United States.

48.      The definition of Publicly Owned Treatment Works ["POTW"] includes any devices and systems used in the storage, treatment, recycling and reclamation of municipal sewage or industrial wastes of a liquid nature.  It also includes sewers, pipes and other conveyances if they convey wastewater to a POTW Treatment Plant.  40 C.F.R. § 403.3(q).

49.      "Treatment works" includes sewage collection systems, pumping, power and other equipment, and their appurtenances, extensions thereof, and any other system for preventing, storing, separating or disposing of municipal waste, including storm water runoff, including waste in combined storm water and sanitary sewer systems.  33 U.S.C. § 1292(2)(A)-(B).

50.      Section 505(a)(1) provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, 33 U.S.C. § 1362(5), for violations of NPDES permit requirements and for unpermitted discharges of pollutants.  33 U.S.C. §1365(a)(1) (authorizing actions against any person alleged to be in violation of an effluent standard or limitation); 33 U.S.C. § 1365(f) (defining "effluent limitation" broadly to include "a permit or condition thereof issued under [section 402] of this title," and "any unlawful act under subsection (a) of [section 301] of this title").

51.      An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a).

52.      Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day for violations occurring after January 12, 2009 and $54,833 per day per violation for all violations occurring after November 2, 2015, pursuant to Sections 309(d) and 505 of the Act.  33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §§ 19.1–19.4.

53.      The Clean Water Act also authorizes the award of reasonable attorneys' fees and litigation costs.  33 U.S.C. § 1365(d).

Complaint for Declaratory
and Injunctive Relief and Civil Penalties                    9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      The Requirements of the 2008, 2016, and Amended 2016 NPDES Permits**

54.     Discharges from the City's wastewater treatment plant were regulated by the 2008 NDPES Permit from January 24, 2009 to October 31, 2016; since November 1, 2016, the 2016 NPDES Permit, as amended on April 6, 2018 by the Amended 2016 NPDES Permit, has regulated the City's discharges.

55.     Any violation of the 2008 NPDES Permit or the 2016 NPDES Permits is a violation of the Clean Water Act.  See 33 U.S.C. § 1365(f); 40 C.F.R. § 122.41; 2016 NPDES Permits, Attachment D § A.1; 2008 NPDES Permit, Attachment D § I.A.1.

56.     The 2016 NPDES Permits and the 2008 NPDES Permit contain prohibitions on discharges.

57.     Section V.A.15 of the 2016 NPDES Permits and the 2008 NDPES Permit describes a prohibition against raising the natural temperature of the receiving water by more than five degrees Fahrenheit.

58.     The 2016 NPDES Permits determines compliance with Section V.A.15 by comparing the "difference in temperature at Monitoring Locations RSW-001D and RSW-001U.

59.     The 2008 NPDES Permit determines compliance with Section V.A.15 by measure the monthly average of the temperature of the receiving water.

60.     The 2016 NPDES Permits and the 2008 NPDES Permit all include a rationale for the receiving water limitation regarding temperature.

61.     Section V.A.1.o of Attachment F – the Fact Sheet – to the 2016 NPDES Permits and the 2008 NPDES Permit states "[t]he Colusa Basin Drain, to which the receiving water is tributary, has the beneficial uses of both COLD and WARM.  The Basin Plan includes the objective that '[a]t no time or place shall the temperature of COLD or WARM intrastate waters be increased more than 5ºF above natural receiving water temperature.'  This Order includes a receiving water limitation based on this objective."

///

///

Complaint for Declaratory
and Injunctive Relief and Civil Penalties              10

# VI.   CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### Discharges of Municipal Wastewater in Violation of the Amended 2016 NPDES Permit, the 2016 NPDES Permit, the 2008 NPDES Permit, and the Clean Water Act

62.   CSPA incorporates each and every allegation contained in the above paragraphs as though fully set forth herein.

63.   The City is a "person" within the meaning of Clean Water Act Section 502(5), 33 U.S.C. § 1362(5).

64.   Pipes and other manmade conveyances within a wastewater treatment plant are point sources under the Clean Water Act.  See U.S.C. § 1362 (14).

65.   The City has discharged municipal wastewater that has caused the natural temperature of the receiving water to rise by more than five degrees Fahrenheit during at least six months between April 25, 2014 and November 1, 2016.  The date and temperatures of these discharges are identified further in Exhibit A to the Notice Letter attached hereto.  See **Attachment 1**.

66.   The City has discharged municipal wastewater that has caused the natural temperature of the receiving water to rise by more than five degrees Fahrenheit during at least twenty-eight weeks between November 2, 2016 to the present.  The date and temperatures of these discharges are identified further in Exhibit A to the Notice Letter attached hereto.  See **Attachment 1**.

67.   Each and every day of each of the six months between April 25, 2014 and November 1, 2016 that the City's discharges caused the natural temperature of the receiving water to rise by more than five degrees Fahrenheit is a separate and distinct violation of Section V.A.15 of the 2008 NPDES Permit and the Clean Water Act.

68.   Each and every day of each of the twenty-eight weeks between November 2, 2016 and the present that the City's discharges caused the natural temperature of the receiving water to rise by more than five degrees Fahrenheit is a separate and distinct violation of Section V.A.15 of the 2016 NPDES Permits and the Clean Water Act.

69.   CSPA is informed and believes, and thereon alleges, that more Clean Water Act

violations by Defendant, including discharges causing elevated temperatures in violation of the receiving water limitations of the Amended 2016 NPDES Permit, will be discovered through this enforcement action.

70.     Defendant's violations of the Clean Water Act will continue each day it discharges insufficiently cooled wastewater in violation of the requirements of the Amended 2016 NPDES Permit and the Clean Water Act.

71.     CSPA is informed and believes, and thereon alleges, that the City's violations are ongoing and it is likely that the City will continue to discharge wastewater in violation of the Amended 2016 NPDES Permit and the Clean Water Act without Court intervention.

72.     By committing the acts and omissions alleged above, the City is subject to an assessment of civil penalties for all violations of the Clean Water Act occurring since April 25, 2014.  33 U.S.C. §§ 1319(d) and 1365(a).

73.     An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

74.     An action for injunctive relief under the Clean Water Act is authorized by section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff, for which harm they have no other plain, speedy, or adequate remedy at law.

## VII.   RELIEF REQUESTED

75.     WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.   Declare Defendant to have violated and to be in violation of CWA section 301(a), 33 U.S.C. § 1311(a), for discharging municipal wastewater not in compliance with a permit issued pursuant to CWA section 402, 33 U.S.C. § 1342, and for failing to comply with all substantive and procedural requirements of the 2008 NPDES and 2016 NPDES Permits and the CWA as alleged herein.

b.   Enjoin Defendant from discharging improperly cooled wastewater to waters of the United States in violation of the Amended 2016 NPDES Permit and the Clean Water Act;

1

        c.   Enjoin Defendant from further violating the substantive and procedural

2

requirements of the Amended 2016 NPDES Permit and the Clean Water Act;

3

        d.   Order Defendant to pay civil penalties of $37,500 per day per violation for

4

all violations occurring after April 25, 2014 and $54,833 per day per violation for all

5

violations occurring after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Act,

6

33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1–19.4;

7

        e.   Award Plaintiff's costs and fees (including reasonable attorney, witness, and

8

consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

9

        f.   Award any such other and further relief as this Court may deem appropriate.

10

11

Dated: July 5, 2019                Respectfully Submitted,

12

                                 LAW OFFICES OF ANDREW L. PACKARD

13

14

                               By: /s/ William N. Carlon
                               William N. Carlon

15

16

                               Attorneys for Plaintiff
                               CALIFORNIA SPORTFISHING
                               PROTECTION ALLIANCE

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Declaratory
and Injunctive Relief and Civil Penalties       13

# Attachment 1

Law Offices Of

# ANDREW L. PACKARD

245 Kentucky Street, Suite B3, Petaluma, CA 94952
Phone (707) 782-4060   Fax (707) 782-4062
Info@PackardLawOffices.com

April 26, 2019

**VIA CERTIFIED U. S. MAIL**
**RETURN RECIEPT REQUESTED**

| | |
|---|---|
| Mayor Greg Ponciano | Mr. Jesse Cain, City Manager |
| City of Colusa | City of Colusa |
| 425 Webster Street | 425 Webster Street |
| Colusa, CA 95932 | Colusa, CA 95932 |

**Re:    Notice of Violations and Intent to File Suit Under the Clean Water Act**

Dear Jesse Cain and Mayor Ponciano:

This firm represents the California Sportfishing Protection Alliance ("CSPA") in regard to violations of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA") caused by the City of Colusa's ("City" or "Colusa") failure to comply with the terms and conditions of (1) *Waste Discharge Requirements for the City of Colusa Wastewater Treatment Plant Colusa County*, Order No. R5-2016-0062-01, as amended by Order No. R5-2018-0018, NPDES No. CA0078999 ("Amended 2016 NPDES Permit"); (2) *Waste Discharge Requirements for the City of Colusa Wastewater Treatment Plant Colusa County,* Order No. R5-2016-0062, NPDES No. CA0078999 ("2016 NPDES Permit"); and, (3) *Waste Discharge Requirements for the City of Colusa Wastewater Treatment Plant Colusa* County, Order No. R5-2008-0184, NPDES No. CA0078999 ("2008 NPDES Permit").  The Amended 2016 NPDES Permit, the 2016 NPDES Permit, and the 2008 NPDES Permit are referred to collectively as "the NPDES Permits."

As required by the Clean Water Act, CSPA puts the City on formal notice that, after the expiration of sixty (60) days from the date of this Notice of Violation and Intent To File Suit Letter ("Notice Letter"), CSPA intends to file suit in Federal District Court pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. §1365(a), against the City for the violations described in this Notice Letter.

Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), requires that sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), a citizen must give notice of his/her intention to file suit.  Notice must be given to the owner or managing agent of the facility responsible for the violations, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, and the Executive Officer of the State of California's State Water Resources Control Board ("State Board").  *See* 40 C.F.R. § 135.2.

CSPA intends to file suit to seek injunctive relief pursuant to CWA Sections 505(a) and (d), 33 U.S.C. §1365(a) and (d), declaratory relief, and such other relief permitted by law to

Notice of Violations and Intent to File Suit
April 26, 2019
Page 2

remedy the CWA violations outlined below.  CSPA will also seek civil penalties pursuant to
Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the EPA Regulation,
Adjustment of Civil Monetary Penalties for Inflation, set forth at 40 C.F.R. § 19.4 (2009).  These
provisions authorize civil penalties for each separate violation of the Clean Water Act of up to
$37,500 per day per violation for all Clean Water Act violations occurring after January 12,
2009, and up to $53,484 per day per violation for all violations occurring after November 2,
2015.  Finally, CSPA will seek to recover its litigation costs, including attorneys' and experts'
fees, pursuant to CWA Section 505(d), 33 U.S.C. § 1365(d).

## I.       ORGANIZATION GIVING NOTICE OF CLEAN WATER ACT VIOLATIONS

        CSPA is a 501(c)(3) non-profit public benefit conservation and research organization,
with offices located at 3536 Rainier Avenue, Stockton, CA 95204.  CSPA was established in
1983 for the purpose of conserving, restoring, and enhancing the state's water quality, wildlife
and fishery resources, aquatic ecosystems and associated riparian habitats.  CSPA accomplishes
its mission by actively seeking federal, state, and local agency implementation of environmental
regulations and statutes and routinely participates in administrative, legislative and judicial
proceedings.  When necessary, CSPA directly initiates enforcement actions on behalf of itself
and its members to protect public trust resources.

        CSPA's members use and enjoy the Sacramento River, Powell Slough, and their
tributaries, as well as waters in and around the Sacramento-San Joaquin River Delta (the
"Delta") for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, and
engaging in scientific study.  Information available to CSPA indicates that Colusa discharges
wastewater in violation of its NPDES Permits into an unnamed tributary to Powell Slough,
which flows to the Sacramento River, which flows to the Delta and discharges into the Pacific
Ocean.  These illegal discharges of wastewater degrade water quality and harm aquatic life in
these waters, and thus impair CSPA's members' use and enjoyment of these waters.  Further,
Colusa's illegal discharges of wastewater are ongoing and continuous.  As a result, CSPA's
members' use and enjoyment of these waters has been and continues to be adversely impacted by
the illegal discharges of wastewater to waters used and enjoyed by CSPA's members.

## II.      THE ENTITY RESPONSIBLE FOR THE ILLEGAL DISCHARGES

        Information available to CSPA indicates that Colusa provides wastewater collection,
treatment, and disposal services to residents and businesses in the City of Colusa.  Colusa's
Public Works Division, Department of City Sewer and Water, is responsible for the day-to-day
operation and maintenance of the sewage collection system ("Collection System"), which is
owned and operated by Colusa.  The City owns and operates the City of Colusa Wastewater
Treatment Plant (the "Facility"), which provides sewer treatment services to a population of
approximately 6,000.  The Facility is located at 2820 Will S. Green Road, Colusa, CA.  The City
Manager is responsible for the day-to-day operations of the City of Colusa, including the
Wastewater Treatment Plant.  The Mayor is a member of the City Council, presiding officer over
all City Council meetings, authorized to sign legal documents on behalf of the City, and
represents the City on local, state, and national levels.

Notice of Violations and Intent to File Suit
April 26, 2019
Page 3

## III.    THE WASTEWATER TREATMENT PLANT, AND THE CITY'S NPDES PERMITS

      The City owns and operates a wastewater collection, treatment, and disposal system, and provides sewerage service to the residents and business of the City of Colusa.  Treated municipal wastewater is discharged to Powell Slough, a tributary to the Colusa Trough, and to the Colusa Basin Drain, all of which are waters of the United States.

      On December 5, 2008, the California Regional Water Quality Control Board Central Valley Region ("Regional Board") issued Waste Discharge Order R5-2008-0184, which rescinded Order R5-2002-0020.  Order R5-2008-0184 became effective on January 24, 2009 and remained in effect until October 31, 2016.  On August 18, 2016, the Regional Board issued Waste Discharge Order R5-2016-0062, which rescinded the 2008 NPDES Permit.  Order R5-2016-0062 became effective on November 1, 2016 and remained in effect until April 6, 2018.  On April 6, 2018, the Regional Board amended the 2016 Permit, Order R5-2016-0062, to include new effluent limitations and other requirements regarding the waste discharge.  The Amended 2016 NPDES Permit, Order R5-2016-0062-01, is the Facility's current NPDES permit.

      All three operative NPDES Permits contain prohibitions against the discharge of wastewater that causes the natural temperature of the receiving water to rise more than five degrees Fahrenheit.  NPDES Permits, Section V.A.15.  While the City is required to measure temperature on a weekly basis, the 2016 NPDES Permit and the Amended NPDES 2016 Permit differ from the 2008 NPDES Permit in one way with regard to the temperature requirements of Section V.A.15.  In the 2016 NPDES Permits, compliance with Section V.A.15 is determined by calculating the difference in temperature between the upstream and downstream sampling locations (RSW-001U and RSW-001D, respectively).  The 2008 NPDES Permit allowed the City to measure temperature as a monthly average, and therefore compliance was determined on a monthly basis.

      The Facility does not have the proper equipment to ensure that the temperature of the treated wastewater is cooled sufficiently prior to discharge into the receiving waters.  As a result, the Facility often discharges wastewater that raises the natural temperature of the receiving water more than five degrees.  From April 25, 2014 to November 1, 2016 – a period during which the 2008 NPDES Permit, and hence the monthly average method of measuring temperature were in effect – the City discharged wastewater that raised the natural temperature of the receiving water by more than five degrees during six months.[1]  From November 2, 2016 to the present – the period during which the 2016 NPDES Permits, and hence the weekly compliance method were in effect – the City discharged wastewater that raised the natural temperature of the receiving water by more than five degrees during at least 28 weeks.

      The City's ongoing and continuous discharges in violation of Section V.A.15 of its NPDES Permit are violations of the CWA and demonstrate serious problems with the City's

---

[1] Attached as Exhibit A is a list of each temperature measurement of discharges that violated Section V.A.15 of the NPDES Permits.

Notice of Violations and Intent to File Suit
April 26, 2019
Page 4

operation and maintenance of its Wastewater Treatment Plant.

## IV.   THE LOCAL WATERWAYS RECEIVING THE ILLEGAL DISCHARGES OF POLLUTANTS AND THE ENVIRONMENTAL IMPACTS FROM THOSE DISCHARGES

### A.   The Receiving Waters

Discharges from the Facility reach the Delta via Powell Slough, tributary to Colusa Trough, and to the Colusa Basin Drain, which is tributary to the Sacramento River (collectively "Receiving Waters"). The Sacramento-San Joaquin Delta, along with the San Francisco Bay, forms the largest estuary on the west coast of North America. The Sacramento-San Joaquin Delta is a 1,600-square mile area of channels and islands at the confluence of the Sacramento and San Joaquin Rivers. Water that is not diverted from the Delta to municipal and agricultural uses flows through to the San Francisco Bay Estuary. The Delta provides habitat to many species of aquatic wildlife, including multiple fish species protected by state and federal law. The Sacramento River and its tributaries provide habitat for aquatic species, as well as opportunities for wildlife viewing, fishing, and other water-related recreation such as swimming, wading and boating.

The Colusa Basin Watershed provides suitable habitat for some forty-four special-status wildlife species during certain times of year. The watershed provides suitable breeding habitat for nine federal or state-listed threatened or endangered species; bank swallow, California tiger salamander, Conservancy fairy shrimp, giant garter snake, Swainson's hawk, western yellow-billed cuckoo, valley elderberry longhorn beetle, vernal pool fairy shrimp, and vernal pool tadpole shrimp. The watershed also provides suitable breeding habitat for 18 wildlife species considered by the state as species of special concern or protected species; Mountain Plover, Western spadefoot toad, Western pond turtle, White-fronted goose, Western Least Bittern, Golden Eagle, Black Tern, Northern Harrier, Merlin, Short-eared Owl, Long-eared owl, Burrowing Owl, Loggerhead Shrike, Yellow Warbler, Yellow-breasted Chat, Grasshopper Sparrow, Yellow-headed Blackbird, and Tricolored Blackbird. The majority of these species utilize freshwater emergent wetlands, vernal pools, and/or riparian habitat; habitats that have been dramatically reduced compared to their historic distribution.

According to the State of California, the beneficial uses of the Colusa Basin Drain include contact water recreation, wildlife habitat, irrigation and stock watering, warm and cold freshwater habitat, warm migration, and warm spawning.[2] Chapter III of the Basin Plan sets forth the water quality objectives for the inland surface waters of the Sacramento and San Joaquin River Basins, including the Delta. Specifically, the Basin Plan states that "[a]t no time or place shall the temperature of COLD or WARM intrastate waters be increased more than 5°F above natural receiving water temperature."[3] By discharging sewage wastewater that is not

---

[2] See Table II-1, Water Quality Control Plan, Sacramento and San Joaquin River Basins, at II-5.00.
[3] See Id. at III-8.00.

Notice of Violations and Intent to File Suit
April 26, 2019
Page 5

properly cooled, the City has violated the Basin Plan, as well as its NPDES Permits.  As such, the City's violations of the Clean Water Act directly harm CSPA's members' use and enjoyment of the Receiving Waters.

## V.  THE CITY'S DISCHARGES OF WASTEWATER THAT ELEVATE THE RECEIVING WATER'S TEMPERATURE VIOLATE ITS NPDES PERMITS

The Clean Water Act requires that all regulated dischargers comply with the terms and conditions of their NPDES permit.  *See* 33 U.S.C. §§ 1311(a), 1365.  Any violation of the 2016 NPDES Permits or the 2008 NPDES Permit is an enforceable violation of the Clean Water Act. 33 U.S.C. § 1365(f).  The City's NPDES Permits prohibit the discharge of wastewater that causes the temperature of the receiving waters to increase by more than five degrees Fahrenheit. *See* 2016 and 2008 NPDES Permits § V.A.15 ("The discharge shall not cause the following in the unnamed tributary to Powell Slough: 15. Temperature.  The natural temperature to be increased by more than 5 °F.")  The City has violated and continues to violate these provisions by regularly discharging wastewater that elevates the temperature of the unnamed tributary to Powell Slough by more than five degrees Fahrenheit.  At a minimum, the City violated the 2016 NPDES Permits and the 2008 NPDES Permit on the dates set forth in Exhibit A (identifying 319 separate dates of violation).

CSPA believes that additional information will be discovered that indicates that City has not reported each and every temperature exceedance or has misreported temperature readings occurring within the last five (5) years.  CSPA puts the City on notice that all temperature exceedances from the Facility occurring in the last five (5) years, as well as any future violations, whether specifically reported or not, will be included in this litigation.

Because compliance under the 2008 NPDES Permit was determined using a monthly average, each day of each month between April 25, 2014, and November 1, 2016 that the City has discharged wastewater that increased the average monthly temperature of the unnamed tributary to Powell Slough by more than five degrees Fahrenheit is a separate and distinct violation of Section V.A.15 of the City's 2008 NPDES Permit and the Clean Water Act. Because compliance under the 2016 NPDES Permits is determined on a weekly basis, each day of each week between November 1, 2016 and the present that the City has discharged wastewater that increased the temperature of the unnamed tributary to Powell Slough by more than five degrees Fahrenheit is a separate and distinct violation of Section V.A.15 of the City's 2016 NPDES Permit, the Amended 2016 NPDES Permit, and the Clean Water Act.  The City's violations will continue each day it discharges wastewater in violation of the requirements of its 2016 NPDES Permits and the Clean Water Act.  The City is subject to penalties for all violations of the NPDES Permits and the Clean Water Act occurring in the five (5) years prior to the date of this Notice Letter.

## VI.  CONCLUSION

CSPA has retained legal counsel to represent it in this matter. Please direct all

Notice of Violations and Intent to File Suit
April 26, 2019
Page 6

communications to Andrew L. Packard and William N. Carlon at the Law Offices of Andrew L. Packard at the address/number below:

Andrew L. Packard
William N. Carlon
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Telephone: (707) 782-4060
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

     Upon expiration of the 60-day notice period, CSPA will file a citizen suit enforcement action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), for the above-referenced violations. During the 60-day notice period, however, CSPA is willing to discuss effective remedies for the violations noted in this letter. If the City wishes to pursue such discussions prior to the initiation of litigation, we suggest that it initiate those discussions immediately.

Sincerely,

William N. Carlon
Counsel for California Sportfishing Protection Alliance

cc:    Bill Jennings, Executive Director, California Sportfishing Protection Alliance
       Ryan R. Jones, City Attorney, City of Colusa

Notice of Violations and Intent to File Suit
April 26, 2019
Page 7

## SERVICE LIST

### VIA CERTIFIED MAIL

Andrew Wheeler, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Mike Stoker, Acting Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

William Barr, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Patrick Pulupa, Executive Officer
Central Valley Regional Water Quality Control Board
11020 Sun Center Drive, Suite 200
Rancho Cordova, CA 95670

# EXHIBIT A

| January 2015 - 31 Days of Violations | | | | |
|---|---|---|---|---|
| Date | RSW-001D Temp. | RSW-001U Temp. | Difference | Effluent Temp. |
| 1/5/2015 | 55 | 45.8 | 9.2 | 56.6 |
| 1/12/2015 | 59.9 | 53.6 | 6.3 | 61.7 |
| 1/21/2015 | 56.6 | 50.7 | 5.9 | 60.9 |
| 1/27/2015 | 60 | 55.4 | 4.6 | 60.6 |
| **Average** | **57.88** | **51.38** | **6.50** | **59.95** |

| October 2015 - 31 Days of Violations | | | | |
|---|---|---|---|---|
| Date | RSW-001D Temp. | RSW-001U Temp. | Difference | Effluent Temp. |
| 10/5/2015 | 74.66 | 67.64 | 7.02 | 72.68 |
| 10/12/2015 | 80.78 | 77.9 | 2.88 | 76.46 |
| 10/19/2015 | 71.6 | 67.1 | 4.5 | 73.22 |
| 10/26/2015 | 68.18 | 60.8 | 7.38 | 71.42 |
| **Average** | **73.81** | **68.36** | **5.45** | **73.45** |

| November 2015 - 30 Days of Violations | | | | |
|---|---|---|---|---|
| Date | RSW-001D Temp. | RSW-001U Temp. | Difference | Effluent Temp. |
| 11/2/2015 | 64.58 | 59.9 | 4.68 | 69.44 |
| 11/9/2015 | 57.92 | 50.72 | 7.2 | 65.12 |
| 11/16/2015 | 59.18 | 49.64 | 9.54 | 62.78 |
| 11/23/2015 | 60.44 | 52.34 | 8.1 | 64.22 |
| **Average** | **60.53** | **53.15** | **7.38** | **65.39** |

| December 2015 - 31 Days of Violations | | | | |
|---|---|---|---|---|
| Date | RSW-001D Temp. | RSW-001U Temp. | Difference | Effluent Temp. |
| 12/1/2015 | 54.14 | 41 | 13.14 | 57.92 |
| 12/7/2015 | 58.1 | 52.16 | 5.94 | 61.34 |
| 12/14/2015 | 52.16 | 43.34 | 8.82 | 59.54 |
| 12/21/2015 | 52.16 | 47.66 | 4.5 | 57.2 |
| 12/28/2015 | 49.46 | 41.18 | 8.28 | 55.4 |
| **Average** | **53.20** | **45.07** | **8.14** | **58.28** |

1

| November 1, 2016 - Present - 28 Weeks of Violations | | | | |
|---|---|---|---|---|
| Date | RSW-001D Temp. | RSW-001U Temp. | Difference | Effluent Temp. |
| 12/27/2016 | 51.62 | 44.6 | 7.02 | 56.84 |
| 3/27/2017 | 62.78 | 56.66 | 6.12 | 62.78 |
| 4/3/2017 | 59.9 | 54.14 | 5.76 | 64.58 |
| 4/10/2017 | 62.06 | 54.14 | 7.92 | 63.5 |
| 9/25/2017 | 67.82 | 62.6 | 5.22 | 71.96 |
| 10/2/2017 | 64.76 | 58.82 | 5.94 | 68.72 |
| 10/23/2017 | 67.28 | 54.14 | 13.14 | 69.26 |
| 10/30/2017 | 69.26 | 63.68 | 5.58 | 71.06 |
| 11/6/2017 | 79.88 | 51.98 | 27.9 | 65.48 |
| 11/13/2017 | 82.22 | 60.26 | 21.96 | 65.12 |
| 11/23/2017 | 70.7 | 58.46 | 12.24 | n/a |
| 11/27/2017 | 67.82 | 57.56 | 10.26 | 66.2 |
| 12/14/2017 | 55.4 | 50.18 | 5.22 | 59.36 |
| 12/27/2017 | 59 | 53.78 | 5.22 | 57.38 |
| 1/2/2018 | 55.76 | 46.58 | 9.18 | 58.64 |
| 1/16/2018 | 60.08 | 53.24 | 6.84 | 60.26 |
| 1/22/2018 | 53.96 | 48.92 | 5.04 | 55.76 |
| 1/29/2018 | 57.38 | 50.18 | 7.2 | 59.36 |
| 2/12/2018 | 55.22 | 48.74 | 6.48 | 58.64 |
| 2/20/2018 | 50.72 | 43.16 | 7.56 | 57.02 |
| 3/26/2018 | 61.88 | 54.68 | 7.2 | 61.52 |
| 4/5/2018 | 66.56 | 60.44 | 6.12 | n/a |
| 9/24/2018 | 73.58 | 67.46 | 6.12 | 75.2 |
| 10/15/2018 | 62.96 | 50.36 | 12.6 | 67.28 |
| 10/29/2018 | 67.64 | 59.9 | 7.74 | n/a |
| 12/10/2018 | 58.28 | 51.62 | 6.66 | 60.98 |
| 12/26/2018 | 55.58 | 47.84 | 7.74 | 59.18 |
| 1/2/2019 | 47.84 | 41.18 | 6.66 | 51.44 |